IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

PAMELA ARCHER,

    **Plaintiff,**

v.

HONDA OF AMERICA MFG., INC.
LONG-TERM DISABILITY PLAN, et al.

    **Defendant.**

Case No. 2:06-CV-763
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge King

## OPINION AND ORDER

This matter is before the Court for consideration of the Plaintiff's Motion for Judgment on the Administrative Record (Doc. #41) and the Defendants' Motion for Judgment on the Administrative Record (Doc. #38). For the reasons that follow, Plaintiff's motion is GRANTED, in part, and Defendants' motion is DENIED WITHOUT PREJUDICE, and this matter is remanded to Defendants for further consideration in accordance with this Opinion and Order.

I.

Plaintiff Pamela Archer ("Plaintiff" or "Archer") seeks long-term disability benefits under the Employee Retirement Security Act of 1974 ["ERISA"], 29 U.S.C. § 1001, *et seq.*, and the terms of a group plan, policy number 5QH 001001 (the "Plan"), maintained by Honda of America Mfg., Inc. ("Honda"). The Plan was issued by Kemper Insurance Companies, and Honda delegated administration of the Plan to Defendant Broadspire National Services

1

("Broadspire" or "Plan Administrator").[1] The Court has jurisdiction over this action under 28 U.S.C. § 1331.

Honda employed Plaintiff as a production assistant from 1996, until she became disabled in 2003. Plaintiff received short-term disability benefits ("STD") under the terms of the Plan for the period of May 12, 2003 through November 7, 2003, based on medical evidence demonstrating a functional impairment that precluded Plaintiff from performing her position at Honda. Specifically, Plaintiff was diagnosed with scleroderma, a rare autoimmune, connective tissue disease. Scleroderma is a chronic, progressive disease characterized by excessive deposits of collagen in the skin or other organs. (Admin. Rec. 603-04).[2]

Upon expiration of her STD benefits, Plaintiff applied for and received long-term disability ("LTD") benefits for a period of 24 months. Plaintiff also applied for Social Security Disability Benefits in November, 2003, as required by the Plan. (Id. at 571, 965). After an initial denial and appeal, Plaintiff was ultimately awarded Social Security Disability Benefits on May 17, 2004, with payments retroactive to November, 2003. (Id. at 418-22). Under the terms of the Plan, Plaintiff's LTD benefit payment was reduced by the amount of her SSA award, and Plaintiff was required to reimburse the Plan for the "overpayment" of insurance benefits which resulted from her retroactive award of Social Security Disability Benefits. (Id.)

---

[1] There appears to be no dispute that Honda did not both fund the plan and administer claims, such that a conflict of interest would arise of the type addressed in *Metropolitan Life Ins. Co. v. Glenn*, 128 S. Ct. 2343 (June 19, 2008). Therefore, the Court will not consider Plaintiff's notice of supplemental authority or Defendants' unnecessary response thereto, and Plaintiff's motion to strike Defendants' response (Doc. #51) is DENIED.

[2] Citations are to the Administrative Record filed by Defendant Broadspire on April 17, 2007, Doc. ## 21-23.

The Plan provided that Plaintiff's LTD benefits would continue beyond 24 months only if Plaintiff established that she was unable to "perform each of the material duties of any Gainful Occupation for which [she was] reasonably fitted by training, education or experience." (Id. at 141). On March 11, 2005, Broadspire informed Archer that in order to continue receiving benefits after November 8, 2005, she needed to present evidence of her inability to perform the material duties of any gainful occupation. (Id. at 778-79). Plaintiff submitted medical records, personal statements, a medical records release, and a completed questionnaire regarding her medical conditions.

A neurologist retained by Broadspire to conduct a peer review of Plaintiff's medical records concluded:

> The medical record[s] submitted for review do not substantiate the above-listed medical symptoms, and the normal exam findings are not consistent with her reprted complaints. The presence of scleroderma and neuropathy would not in itself preclude work. Although, the claimant reports limited endurance and weakness, nevertheless the physical exam findings do not describe significant weakness. . . .
>
> It is my opinion that the documentation does not demonstrate objective evidence of functional impairment, which would preclude the claimant from performing "any occupation." Restrictions and limitations would be those consistent with sedentary or light work.

(Admin. Rec. at 279).

Broadspire also conducted an Employability Assessment Report, looking for jobs within 50 miles of Plaintiff's residence, consistent with her skills and physical restrictions, and paying at least 50% of her Honda salary, as required by the Plan. (Id. at 6, 258-259). The report identified several potential, sedentary jobs. Based on the foregoing, Broadspire terminated Plaintiff's LTD benefits effective November 7, 2005, and notified Plaintiff of its decision in a letter dated August

3

23, 2005. The letter explained Plaintiff's right to appeal the decision within 180 days.

Plaintiff submitted a handwritten appeal of Broadspire's decision, which Broadspire received on October 5, 2005. (Id. at 285-292). She subsequently provided additional medical records in support of her disability claim, received by Broadspire on October 21 and 28, 2005. (Id. at 443). Several of Plaintiff's treating physicians opined that Archer was fully and permanently disabled and unable to return to work at any job due to her scleroderma and symptoms including lesions on her fingers, dizziness, difficulty swallowing, gastroesophageal reflux, persistent abdominal bloating, sprains, tendonitis, and carpal tunnel. (*See* Admin. Rec. at 289-292).

As part of the administrative appeal process, Broadspire sent Plaintiff's medical records to four peer reviewers, specialists in the fields of orthopedic surgery, neurology, gastroenterology, and podiatry.[3] Each separately concluded that the objective medical evidence, together with Plaintiff's subjective complaints, did not preclude her from performing "any occupation." Accordingly, Broadspire denied Plaintiff's appeal on November 18, 2005. (Id. at 164-67). Broadspire's letter listed the materials considered, summarized the peer review process, and concluded:

> [T]he Appeal Committee has determined there was insufficient medical information (i.e. evidence of your inability to use your upper extremities and sit throughout a workday; neurological exam findings to substantiate any

---

[3] Plaintiff asserts that the peer reviewers were employed by Broadspire. Broadspire denies that allegation, and states that the doctors were "independent consultants retained to conduct peer reviews." There is no evidence of either position in the record, but in the absence of proof of an actual conflict of interest tainting Broadspire's administration of Plaintiff's claim, the Court will not assume one. *See Kalish v. Liberty Mutual/Liberty Life Assur. Co. of Boston*, 419 F.3d 501, 506-08 (6th Cir. 2005); *Davis v. Unum Life Ins. Co. of America*, 444 F.3d 569, 575-76 (7th Cir. 2006).

4

>neurological dysfunction; current clinical record of consistent vomiting, severe abdominal pain, gastrointestinal bleeding, significant weight loss, malabsorption, or malnutrition; clinical evidence of any cognitive impairment; evidence of your inability to maintain a course of moderate activity with shoe modifications and orthotics; etc.) to support your inability to perform each of the material duties of any gainful occupation.

(Id. at 166). The letter notifies Plaintiff of her right to bring an action under ERISA. (Id.)

Archer retained an attorney, who contacted Broadspire by letter dated December 18, 2005, requesting that Archer's appeal be re-opened in order for Broadspire to consider Archer's Social Security Disability Benefits file, a vocational assessment, and an updated functional capacity exam, all within the initial 180-day appeal period. (Id. at 134-35). Broadspire denied Plaintiff's request on the grounds that she had exhausted the one administrative appeal provided by the Plan. (Id. at 133). Nevertheless, on February 21, 2006, counsel for Plaintiff submitted an FCE conducted on January 26, 2006, together with a vocational assessment prepared January 27, 2006, and Plaintiff's Social Security Disability Benefits file. (Id. at 929-1181). These materials were not considered by Broadspire, were not part of the claims or administrative appeal processes, and cannot be considered by this Court as part of the Administrative Record. *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998); *Shelby County Health Care Corp. v. Southern Council of Industrial Workers Health & Welfare Trust Fund*, 203 F.3d 926, 932 (6th Cir. 2000).

## II.

Both Plaintiff and Defendant move for judgment based on the Administrative Record. Because the Plan gives discretionary authority to Broadspire to determine benefits and construe the terms of the plan, the standard of review in this Court is whether the benefits decision was

arbitrary and capricious. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

> The relevant provision of the Plan states:
>
> The plan administrator is the named fiduciary for purposes of ERISA and has the discretionary authority to interpret the terms of the plan and to perform all other aspects of plan administration, including but not limited to determining eligibility for benefits.

(Admin. Rec. at 1205).

The arbitrary and capricious standard of review requires the Court to uphold a benefit determination if it is "rational in light of the plan's provisions." *Gismondi v. United Technologies Corp.*, 408 F.3d 295, 298 (6th Cir. 2005), quoting *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 381 (6th Cir. 1996). "When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.*, quoting *Davis v. Kentucky Finance Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989). The Court must accept a Plan Administrator's rational interpretation of the plan "even in the face of an equally rational interpretation offered by the participants." *Gismondi*, 408 F.3d at 298, citing *Morgan v. SKF USA, Inc.*, 385 F.3d 989, 992 (6th Cir. 2004).

### III.

Plaintiff maintains that Broadspire's decision was arbitrary and capricious for the following reasons: it relied on the opinions of its retained medical peer reviewers; it failed to have Archer undergo a physical examination as part of the LTD review process; it failed to consider Plaintiff's Social Security Disability award; it failed to identify occupations that Plaintiff could perform; and it failed to re-open the appeal to consider Plaintiff's additional

6

medical and functional evidence and Social Security file.

The Court finds that Broadspire acted in an arbitrary and capricious manner by refusing to consider Plaintiff's Social Security file, the updated FCE and the vocational assessment. The Social Security decision is just one factor to be considered by the Court in determining whether the Plan Administrator's decision denying benefits was arbitrary and capricious. Because the information submitted by Plaintiff on February 21, 2006 was not considered by Broadspire, and is not a part of the Administrative Record properly before the Court, the Court will remand this matter to the Plan Administrator to evaluate Plaintiff's claim for benefits in light of all relevant information. A remand will allow the Social Security file to become part of the Administrative Record, thereby enabling the Court to consider the Plan Administrator's decision in full, including its treatment of the Social Security award. The Court cannot determine whether Broadspire's benefits decision was arbitrary and capricious without a considering a complete Administrative Record.

Two recent decision from this District dictate this result. First, in *Quast v. Square D Co.*, Case No. 01-CV-1135, 2003 U.S. Dist. LEXIS 19644 (S.D. Ohio July 15, 2003) (Frost, J.), the Court remanded the plaintiff's claim for LTD to the plan administrator to afford it the opportunity to review the Social Security decision. In *Quast*, the Social Security finding of plaintiff's disability was issued after the plan administrator had denied the plaintiff's administrative appeal under ERISA. Yet the Court held that, "given the responsibility and deference attributed to the [plan administrator's] fiduciary status, the [administrator] should be privy to all information that tends to show whether or not Plaintiff Quast is disabled. Such information includes the evidence evaluated, and the decision rendered, by the SSA

7

Administrative Law Judge." *Id.*, 2003 U.S. Dist. LEXIS 19644 at *3.

The second case on-point is *Borys v. Metropolitan Life Ins. Co. MetLife Disability*, Case No. 03-CV-1162, 2005 U.S. Dist. LEXIS 8013 (S.D. Ohio May 4, 2005) (Marbley, J.), wherein the Court considered a long-term disability claim under a group benefits plan that "strongly encouraged" claimants to apply for Social Security benefits and contained an offset allowing actual or estimated Social Security disability benefits to be deducted from an LTD award. *Id.* at *19. In *Borys*, the Social Security finding of disability was issued before the ERISA administrative review process, and the plaintiff's file was available to the plan administrator. The Court was not persuaded by MetLife's argument that, because the plan participant did not ask the appeals committee to consider her Social Security award during the administrative appeal, it had no duty to do so. Rather, MetLife had an independent "obligation to address the SSA's determination of total disability when terminating benefits." *Id.* at fn14. Judge Marbley further held:

> The findings of the Social Security Administration "should have at least been noticed" by MetLife during its review of Plaintiff's claim. *See Hurse* [*v. Hartford Life & Accident Ins. Co.*], 77 Fed. Appx. 310, [WL] at *6 (noting that SSA determinations on benefits "should carry significant weight" if "there is evidence that the plan administrator urged or aided the claimant in his pursuit of social security benefits"); *Napier v. Hartford Ins. Co.*, 282 F. Supp. 2d 531 (E.D. Ky. 2003) (holding that Hartford "erroneously ignored" the SSA's determination of complete disability after it "actively encouraged" Plaintiff to seek Social Security Disability Benefits). The Court recognizes that the record underlying the SSA's determination of complete disability is sparse; however, MetLife's failure at least to distinguish the SSA's findings in its termination letters to Plaintiff is incompatible with its policy advocating her receipt of Social Security Disability Benefits. *Pierce v. Kentucky Utilities Co. Long Term Disability Plan*, 357 F. Supp. 2d 979, 989-90 (E.D. Ky. 2005) (questioning the propriety of a plan administrator's attempt "to lighten the cost to an employee welfare plan" by "encouraging and supporting a claimant to demonstrate total disability to the Social Security Administration [and] reduce the welfare plan's payment by the

8

> amount of the social security award, yet then turn around and deny that the claimant is totally disabled under the employee welfare plan"). Even assuming MetLife had no inherent conflict of interest in 2003, the Court holds that where a plan administrator has strongly encouraged a plan participant to obtain Social Security Disability Benefits and received a monetary benefit therefrom, the plan administrator must explicitly distinguish the SSA's finding of total disability upon termination. The SSA's determination is by no means binding, but it should be properly addressed.

*Borys*, 2005 U.S. Dist. LEXIS 8013 at *24-25.

The Sixth Circuit considered this issue in *Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 530 (6th Cir. 2003), wherein the plaintiff/plan participant had applied for Social Security Disability Benefits "at Fortis' insistence."[4] After receiving a Social Security award based on a finding of total disability, the plan administrator reduced LTD benefits and sought to recover the "overpayment." Yet the plan administrator accorded no weight to that same Social Security finding when it terminated the plaintiff's LTD benefits. *Id.* at 530. The Court of Appeals found the administrator's conduct "totally inconsistent" and held that "the principles of judicial estoppel certainly weigh against Fortis taking such inconsistent positions." *Id.* (citing *Ladd v. ITT Corp.*, 148 F.3d 753, 755-56 (7th Cir. 1998) (plan administrator's disregard of the SSA's determination, after it pushed plaintiff to apply and benefitted from the SSA award was incompatible)).

---

[4] *Darland's* holding that ERISA plan administrators are generally required, like the SSA, to give deference to the opinions of a claimant's treating physician was rejected by the United States Supreme Court in *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003). Subsequently, the Sixth Circuit has clarified that the "SSA determination, though certainly not binding, is far from meaningless. As the Court said in *Black & Decker*, a plan administrator may not arbitrarily disregard the medical evidence proffered by the claimant, including the opinions of her treating physicians. 538 U.S. at 834. Here, the SSA determination, at a minimum, provides support for the conclusion that an administrative agency charged with examining [plaintiff's] medical records found, as it expressly said it did, objective support for [the treating physician's] opinion in those records." *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294 (6th Cir. 2005).

The plan booklet accompanying Honda's Plan states that a participant's monthly benefit will be reduced by the amount of "Other Income Benefits," defined to include the "amount of disability or retirement benefits under the United States Social Security Act . . ." (Admin. Rec. 1190-91). Moreover, the booklet states that Social Security Disability Benefits benefits will be estimated and the monthly benefit reduced by the estimated amount, unless the participant applies for Social Security. (Id. at 1192).

The Administrative Record establishes that Archer applied for Social Security Disability Benefits, as required by the Plan, at the insistence of the Plan Administrator, and with the assistance of Defendants' agent, Allsup, Inc. (Id. at 571, 414). On May 17, 2004, following reconsideration of her initial application, Archer was awarded Social Security Disability Benefits, with benefits retroactive to November 1, 2003. (Id. at 418-422). Broadspire lost no time in pursuing and collecting the resulting "overpayment" of insurance benefits to Plaintiff. (Id.) Yet, when presented with Plaintiff's claim for LTD benefits, Broadspire completely disregarded the Social Security disability finding and benefits decision.

Defendants contend that the Plan Administrator was not required to consider the Social Security award because Social Security and ERISA disability determinations have different standards, and that because the Social Security decision is not part of the Administrative Record, the Court cannot consider the Social Security file in reviewing Broadspire's decision. The defendants in *Quast* raised identical arguments.[5] Judge Frost discussed the different standards at length, recognizing that unlike in Social Security cases, "ERISA plan administrators are not

---

[5] The Court notes that the parties in *Quast* were represented by the same counsel representing Archer and Defendants in this case.

10

obligated to accord special deference to the opinions of treating physicians." *Quast*, 2003 U.S. Dist. LEXIS 19644, at *5 (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)). The Judge found that:

> The instant case does not implicate the holding in *Nord*. Plaintiff Quast has not argued that the [administrator] should have given controlling weight to the opinion of his treating physician(s). Nor does Quast argue that the [administrator] should be required to explain why the committee ultimately chose to credit other relevant evidence over such opinions. *See Nord*, 123 S. Ct. 1972, *supra* at 22. Plaintiff Quast only requests the opportunity to provide the administrator with the SSA notice of decision. He does not submit that the [administrator] is mandated to follow this decision, or to give his treating physician(s) opinions the same deference that the administrative law judge afforded to them.
>
> Moreover, the holding in *Nord* does not disturb Sixth Circuit precedent establishing that a decision rendered by the SSA is a factor to be consider by a Court determining whether an ERISA plan administrator's decision was arbitrary or capricious.

*Quast*, 2003 U.S. Dist. LEXIS 19644 at *6-7 (citing *Darland*, 317 F.3d at 527).

The Court adopts the same reasoning herein, and finds that Broadspire was required, as a function of its fiduciary responsibility, to consider the Social Security Disability Benefits award and supporting materials in Archer's Social Security file. *See Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 294-295 (6th Cir. 2005) (discussing the Seventh Circuit's decision in *Ladd*, 148 F.3d 753, where, "on similar facts, Judge Richard Posner drew on the 'penumbra of judicial estoppel' and concluded that a decision by a plan administrator to seek and embrace an SSA determination for its own benefit, and then ignore or discount it later, 'casts additional doubt on the adequacy of their evaluation of . . . [a] claim, even if it does not provide an independent basis for rejecting that evaluation.'" *Id.* at 756).

As for Defendants' argument that the supporting material for her Social Security

11

application was not submitted by Plaintiff during her administrative appeal and is not part of the Administrative Record, "the Court should take care to ensure that it has the information needed to adequately determine whether a plan administrator's decision was arbitrary and capricious. The fiduciary relationship between employee and ERISA plan administrator, as well as the facts of this particular case, demand as much." *Id.* at *8.

Detailed notes from Broadspire's claim file establishes that it was aware of Archer's Social Security application, her appeal of the initial denial of benefits, and her eventual retroactive award of benefits. In fact, Plaintiff signed a release permitting Kemper, the insurer, and Allsup, the company retained by Defendants to assist plan participants with Social Security Disability Benefits applications and appeals, to obtain her Social Security application. (Admin. Rec. at 571). Defendants claim that they met their obligation to consider the Social Security decision, because the one-page "Notice of Award" is included in the Administrative Record and is listed as a document considered by Broadspire. (Admin. Rec. at 165). Yet, as in *Borys*, neither the LTD termination or appeal denial letters make any reference to Plaintiff's Social Security Disability Benefits award or the basis for it. As set out in *Borys*, it is no excuse that Plaintiff did not initially ask the Plan Administrator to consider her entire Social Security Disability Benefits file as part of her appeal; Broadspire had an independent duty to do so, and explicitly to distinguish its decision from that of the Social Security.

Defendants' refusal to consider Plaintiff's Social Security file after it was provided to them by counsel for Plaintiff, within the initial 180-day appeal period, was arbitrary and capricious. Although Defendants claim that Broadspire was not "required" by the terms of the Plan or by statute to re-open Plaintiff's appeal, the caselaw discussed herein makes it clear that

12

Broadspire had a duty to consider Plaintiff's Social Security file in reviewing her LTD claim and appeal in the first place. Defendants have not identified any legal, equitable, or practical reason it could not re-open the appeal to consider the additional information submitted by Plaintiff, particularly since the appeal period had not run. In *Borys*, *Darland*, and *Calvert*, a Social Security finding of disability had been made before the ERISA review; in *Quast*, the Social Security decision was made after the ERISA review was complete. In each case, the Courts have consistently held that the Social Security decision cannot simply be disregarded by a plan administrator that first required the plan participant to apply for Social Security Disability Benefits, and then benefitted from the award of those benefits.

In addition to considering the Social Security award, "[a] reasonable decision maker, one not operating under a predisposition or inclination to terminate benefits, would welcome the opportunity to review all relevant data and personal examinations before taking the serious step of terminating disability benefits." *Reipsa v. Metropolitan Life Ins. Co.*, Case No. 01 C 3407, 2002 U.S. Dist. LEXIS 13188, *18 (E.D. Ill. June 11, 2002). The Court finds that the functional capacity evaluation, the vocational assessment, and Archer's entire Social Security file submitted to Broadspire by Plaintiff on February 21, 2006, constitute relevant data that should be considered as part of Plaintiff's administrative appeal of Defendants' decision to terminate long-term disability benefits.

Because the Court believes that "the plan administrator needed additional evidence unavailable at the time of his decision, the proper course [is] to remand to the trustee for a new determination." *Quast*, 2003 U.S. Dist. LEXIS 19644 at *12 (citations omitted); *see also University Hospitals of Cleveland v. Emerson Electric Co.*, 202 F.3d 839, 841 (6th Cir. 2000);

13

*Williams v. International Paper Co.*, 227 F.3d 706, 715 (6th Cir. 2000) ("[R]emand is the proper remedy in some cases. *See Gallo v. Amoco Corp.*, 102 F.3d 918 (7th Cir. 1996) (remanding because adequate findings of fact were not made by court or agency); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1073-74 (2d Cir. 1995) (remanding when it was unclear that the claim should be granted)").

The Court will not conduct its review of Broadspire's decision to terminate Plaintiff's LTD benefits until Broadspire has had the opportunity to review and to render its decision based upon "all relevant data" concerning Plaintiff's claim. *Quast*, 2003 U.S. Dist. LEXIS 19644 at *2-3.

## IV.

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. #41) is GRANTED, in part. Defendants' Motion for Judgment on the Administrative Record (Doc. #38) is DENIED WITHOUT PREJUDICE, and the matter is remanded to Defendants for further consideration in accordance with this Opinion and Order. This case is STAYED until the fiduciary has made a final determination upon remand.

**IT IS SO ORDERED.**

8-15-2008
**DATE**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**

14